Products Corporation. Mr. Presta, before we begin, we assume that you've resolved a dispute over the exhibits that you wanted to display this morning? I think we don't need to use the exhibits. We've decided not to use them. All the evidence in there is in the record. May it please the Court, my name is Joe Presta. Together with Mark Kittredge, we represent Fallon. I'd like to reserve five minutes for rebuttal. In this case, the dictionary-based definitions, unfortunately, for rod, rod-like, and preferential scattering were all out of context and, more importantly, failed to account for some very important prosecution history that occurred in the very first office action of the first parent case of all three of the patents in this case. I just have one question. I want to make sure I'm understanding a patent drawing correctly. If I look at the 238 patent, which is the same spec as all of the patents, am I correct in understanding that your client claims a solid waveguide? In other words, I look at the 238. I'm sorry, no, the other side claims a solid waveguide. I apologize. Is it your understanding that figures 3, 9A through C, and 15 show that Eyelight claims a solid waveguide? Yes, Your Honor, that's a critical issue in this case. So do these lines indicate, in a patent drawing, indicate solidity? Yes, Your Honor, yes they do, and that's our position. Those diagonal lines on 3, 9 through C, and 15? Correct, Your Honor. Now, and that's very important and critical to the case, because in the prosecution history- I apologize for momentarily getting you mixed up with the other side. My mistake. I was too wrapped up in the patent. Thank you. Well, the interesting thing is that there were hollow embodiments that originally started out in a provisional application that was filed in this case. There was an arch-shaped hollow embodiment. There were a variety of hollow embodiments that were contained in the provisional application, and there was one solid embodiment contained in the provisional application, and the drawings in the provisional application that are relevant are at A-207. They're also at page 31 of our brief. Really a critical issue in this case is that in the provisional application there was one solid embodiment, and when the utility application was filed- Where at 207 are the two hollow, are the hollow and the solid? Where do we see the solid embodiment in the spec? No, you don't see it. There's very few words actually in the spec. I'm sorry, in the provisional application that you were talking about. Okay, at 207, your honor, the hollow ones are located. At 207 on the bottom it says variations on this approach, and there are actually three possible embodiments, all of which we believe clearly show that they're hollow in the middle. There's actually no words to describe these embodiments, unfortunately, but what you will see is on 205, a page earlier, two pages earlier, at the very bottom there is a solid embodiment there, and that is the embodiment that ultimately, if you look to the patent to figure three, is the only one that was carried forward into the utility applications, and what it shows is that there is actually the entire thing is solid, just like your honor was pointing out in the utility application. Now ILITE says that it acknowledges that it gave up, if you go back to 207, that it disclaimed the, I guess the first one on the left, right? Yes, your honor, which they refer to as tubular. But they don't make any concession in that regard with respect to the other two, is that correct? Correct, yes, your honor, but there is an important concession about that middle embodiment that you're talking about that looks like an arch. The concession is that our product, the foul and the accused products, are all essentially identical to that. We think that's important because the important aspect of this case is to determine the scope of the disclaimer, what was really disclaimed during the prosecution, and if ours is identical to that, and that was disclaimed, then we believe this court could completely reverse rather than having to remand if it didn't. Your position is that if hollowness, and I'm not sure if that's a word in the dictionary, but if hollowness has been disclaimed, you do not infringe as a matter of law. That's correct. Is that your position? Absolutely, and the reason is because the scope of the disclaimer excludes hollow, we believe that's a question of law for this court, and because of the admission that we are just like that, I believe it's in this court's hands to actually reverse it if the court agrees. I would also point out that the structure of the accused products are not disputed and they can be seen at appendix 4327, also at page 20 of our brief, and I think it's important to see that we have a hollow arch-shaped lens, which corresponds very similarly to the arch-shaped embodiment, and the parties agree that this basically is identical to the arch-shaped lens. So it's your view that hollowness is the most important issue rather than shape? Well, what's happening here is I think Eyelight's taking the position that when they say they're trying to limit the disclaimer, and I think we capture certain hollow embodiments with their arguments, but they're arguing that when you have an outer lens, because that's solid, because the material that goes around the outside, even if it's very thin, is solid, that somehow that's not hollow, but we believe that all things that go around the outside of something that are waveguides are solid. They're not gas and they're not liquid, so it's not the point of whether there's a solid outer surface. The question about whether they're solid is whether the entire waveguide itself is solid. And why is that important, Your Honors? Well, that is important because in the first office action, in response to the first rejection of the parent case, there was various rejections, and it was explained that the invention itself requires that the waveguide be solid. This is the discussion at 4469 in the Joint Appendix? Yes, Your Honor, and there were two very important things that happened there. One was that it was explained that, quote, an essential feature of the invention is to use this waveguide to take light and expand it into an oblong pattern, something that was not contained in the district court's constructions, but the idea of elongating the light using a solid waveguide was described as being very, very important. And more importantly, well, also, that statement, of course, is consistent with the specification where the specification calls this idea of elongating the light into an oblong shape, quote, the quintessential feature of the invention. Your Honor, that is at column 6, lines 52 to 57 of the specification of the 238 patent at A3900. So we have in the prosecution history this idea of making an oblong pattern with the waveguide as being, quote, essential. We have the specification telling us it's the quintessential feature. But it even goes further than that. Light went on after that to explain, well, how do you get this oblong light pattern? And they explained that, quote, once again, quote, it's essential. It requires, I'm sorry, the quote is that it requires an essentially solid rod. And that is, again, in that same response at 4469. So your client's argument before the patent office was, look, Sladen discloses something that's hollow that doesn't achieve the light scattering that we do. We achieve light scattering, and in order to do that, it's essential or required that the waveguide be solid. Correct, Your Honor. And even more important than just being solid, and once again, this wasn't our patent. We didn't prosecute it. We were on the defendant's side. I apologize again. I understand. But the important thing about that is not only does it have to be hollow, but they made very clear that it has to be solid. I'm sorry. It was made very clear that it would exclude hollow, thin-walled diffusers like in Sladen. And you'll see that there's a thin wall in Sladen that goes all the way around kind of in a horseshoe shape, and that was referred to as having thin walls. Of course, those walls are solid around the outside. That's not the point. There's always going to be a solid wall on the outside. The question is whether the entire internal cavity is filled so that it represents a solid waveguide. Go ahead. In your view, Sladen is the key prior reference. I think Bischoff was mentioned, but there doesn't seem to be much discussion in the briefs about Bischoff. There's not a lot, and because Sladen is just so on point, I think that our points are made very clear based on Sladen, and it's clear from the prosecution history that those types of thin walls with a hollow shape under them were disclaimed. I apologize. I've been hogging the floor. I think Judge Garza has a question. Yes, sir. I just was wondering, Mr. Presto, about Figure 2 of the patent, where it does show a solid block of 14, but then what might be an empty space above 14. Do you see that? Yes, Your Honor. Fortunately, I think—  Is that what you're saying? I was going to say, Your Honor, it's very clear, I think, from the descriptions and the rest of the figures in context that there's no support, and I don't think EyeLight is making any argument that there's support for a hollow-type embodiment within their patent. I think the parties agree on that, but I can't speak for them today. So we don't think there's any drawing or description of hollow. There was, arguably, in the provisional application, but that was not carried forward, and why was that not carried forward? Because the applicant has told us in the specification of the utility application and in the prosecution history that it's essential that it be a solid rod. But I want to point out, it's not just that it has to be a solid rod. It also—whatever that solid rod is construed to mean, and we think this was an important part of the claim construction that was missed, that solid rod needs to—the definition has to clearly exclude hollow, thin-walled shapes like Sladen and like ours. So there should be no ambiguity left of whether it's solid or not. The disclaimer has to be represented accurately in the construction. Now, unfortunately— Has your total disclaimer argument been based on that statement that was made on 4469? Well, it's 44—yes, 4469 is pretty critical, but there really is—it starts at 4449 all the way to 5-2, because before the applicant addressed the 102 rejection, he just—I might explain to the examiner, before we get into any of the rejections, let me just tell you what's essential to our invention. And they gave a very nice explanation about what's essential to it on the earlier page, starting at 44, 64, and 65. So I think you have to read that whole response to understand the full scope of the disclaimer, because then there was a 112 rejection on this exact term, preferential scattering. So what the applicant—the examiner didn't really know what it meant and whether it was being covered or not, and that's one of the disputed terms. Fortunately, I might explain to the examiner exactly what they meant by preferential scattering. It needs to be a waveguide that turns light into an elongated oval pattern. So they defined that, and the district court's construction was simply that the rod needed to be in the shape of a wand. Unfortunately, dictionaries often lead us to the wrong result in claim construction issues. Also, the term preferential scattering—the district court used a dictionary that preferential means desirable, and of course that's probably a correct dictionary definition, but unfortunately, in this case, preferential is a technical term that has a very technical meaning, and that was defined— But I understand you would be saying, Mr. Presser, that if we were to agree with you on the disclaimer point, we don't need to get into these other issues. I agree 100 percent that if the disclaimer, we believe, covers the product, it sweeps across all the claims, and should give us a non-infringer position in this case. I see I'm into my rebuttal time. All right, we'll give you some back. Thank you, Mr. DeZoe. Your Honor, I think it may be helpful to the court, in view of the questions asked of the appellant's counsel, to focus, to stay on point, and I'll try to give you our view. Could you please move over to the podium so we can— I will. Or do you have a mic on? Thank you, Your Honor. It may be helpful, Your Honor, to consider Slayton, the patent itself. What's overlooked in the brief submitted by the appellant is actually the structure of Slayton, and they focus on one—so it's actually an omega-shaped slotted tube, but Slayton appears at the appendix page, starts at 4417, and what's shown on that page is basically Figure 1, which appears at 4418. One interesting point— I understand, though. Is it correct that what we see in Figure 1 of Slayton, and I guess in Figure 4 of Slayton, is hollow? Yes. Is it correct that what your client claims is a solid waveguide? Yes. Those drawings 3, 9 through C, and 15 in the patent all show a solid waveguide, not a hollow waveguide? That's correct, Your Honor. That's a preferred embodiment. All right. Let's talk a bit about hollow and what it really means. If you look at the Slayton patent, you'll see in Figure 1 Slayton's construction, and Slayton explains this in columns 3 and 4, particularly column 4, line 45 to 62. What Slayton has is a different approach to trying to simulate neon lighting. Slayton has, as you see in Figure 1, this tube, and it is hollow. It's like a donut. It's got plastic and a big hole in the middle, and that's the hollow that we discussed. By the way, the examiner, the primary examiner, Mr. Sember on Slayton, was the same examiner who brought this up. He handled the Eyelight patents, and he brought this up in the examination of the Eyelight patents. But what Slayton shows is this. You'll see this little ball. It's right above the line, the numeral 50 in Figure 1. That's one of the LEDs. There's a whole strip of those. But that sits below this hollow tube, and Slayton describes at column 4 what that is. He says, since the diodes, 51, 53, 55, are external to the outer diameter of the diffuser 10, that's what we've been looking at, that hollow tube, refracted light can be emitted from the fixture only after being twice refracted by the diffuser. In addition, the inner and outer walls provide reflected light throughout the cross-section. It is believed that this combination of reflected and refracted light in the translucent tube is what affords the neon light glow of the fixture. Then he discusses the slotted embodiment. The slotted embodiment is Figure 4 of Slayton. He says, same column, column 4, in the slotted embodiment, the slot is aligned, etc. This may somewhat reduce the quality of the neon simulation, but does facilitate the assembly and maintenance of the diffuser 10. Why is that? Well, apparently, who knows, this is just a patent, but if you look at Figure 1, these flanges, the big flanges at the bottom of the tube, have to fit and be seated in the housing. Now, there may have been a problem in doing that, so this slot was formed. We don't know what the size of the slot was, but it was shown in Figure 4, and that permitted the sides to be compressed, so that these flanges, 19 and 15, would fit in the housing where they should. Now, so what does Slayton show? It shows a hollow tube, light that comes and hits the outside of the tube, is what he says. And by doing that, it must be refracted and reflected multiple times on the inside, this hollow portion. Now, we did distinguish, EyeLight distinguished over that, and the examiner accepted it. EyeLight said, no, the rod is solid, and that's not showing. We don't use those multiple refractions, which Slayton said were absolutely necessary. It's not used in the patent, in the figure we look at, because... Mr. Mizzou, what does seem to me, one way or the other, to be critical, is this presentation at 4469 by the applicant. And again, as I think I said to Mr. Presta, and I can only speak for myself, I see EyeLight saying, look, Slayton is hollow, and it doesn't achieve this scattering that we do. We are not hollow, we achieve the scattering, and in order to achieve that scattering, we have to be hot solid. Correct. So, I mean, it does seem, I'm having a hard time seeing why that, when you put together what Slayton, and to a lesser extent Bischoff show, and when you put together the statement at 4469, and the 238 patent, I mean, I'm having a hard time, again, I can only speak for myself, seeing why there's not a disclaimer of hollowness in the waveguide. There is. Pardon? I don't disagree. There is a disclaimer. But what does hollow mean? And that's what I've been trying to describe. Hollow, in the sense that Slayton used it, was this dome, where you have the dome around the outside and a hole in the middle. That's what he has. And he relies on that. He says, his diodes, the light emitting things... But it's not like saying we don't have a dome. If you look into our waveguide, you see material in there, you can't see an open space. Correct. Now, maybe this is a fact issue on infringement or something, but is the Fallon product, I look at those pictures, is it hollow or not? Fallon's device? Yeah. It is not. This thing here that we have in Mr. Presto, the 20. Yes, Your Honor. Did you say which brief? This is a blue brief. And I think there's other pictures, too. You've got a good picture at 30, maybe 24. There's a better picture, actually, figure 59 at 24 of your brief. Correct, Your Honor. And, Your Honor, I submit to you that that is solid. There is no question it is a U-shape. That doesn't mean it's hollow. That's a solid piece. I agree it's solid in terms of what's the structure of the U. But where are we left with this? What about this space that I'm pointing to that's the internal part of the U? That's, frankly, with all due respect, meaningless, and I'll try to explain why. It does not achieve what Slayton was trying to achieve with his tube, which has material. The outer diameter goes around that tube, and Slayton said, I take advantage of that because I then have multiple refractions of light. Now, in Fallon's device and in our device, that is solid. This space you see under there is not the hollow that is the tube. You don't get multiple refractions in Fallon's device. You have a single because all the diodes are internal. None of the light in Fallon's device, none of the light hits the outside diameter. All the light comes up from the inside, is reflected off walls. By the way, there are many other distinctions in the claims, but are reflected off the interior walls of Fallon's device, shiny black walls. And that all comes into the inside and then is emitted. I have one more question. I think Judge Galliard had a question. Yes. Go ahead. So I do understand the problem. Just to sum up, I want to make sure I understand. You're saying that when in the prosecution at 4469, eye light talks about not being hollow, it's not talking about this space in here. It is talking about that. That's the tube. Judge, that space is like the inside of the donut. The donut has material around it. If you were shooting a light at a donut, and the donut is on edge, so the hole is here. It will go right through it. That light would always hit the outside. Yes. Now, what does that do? As Sladen explains, that gives him multiple refractions. Not just a single refraction, but multiple refractions and many internal reflections. And that's what he relies on to get a glowing tube. In both our device and in Fallon's device, all the light never hits the outside. Well, let me ask you then, at 4469, what is eye light talking about when it refers to a solid rod? What is solid? What is it saying is solid? The material that forms the rod. There is no internal, in other words, there is no internal hole. There is no internal space. In the sense that Sladen... There is no donut hole. There is no donut hole. And they point to the slotted tube. Sladen says that operates exactly like his entire donut. And that appears at... We just had Sladen. It's in column 3, right? Yeah. At lines 55 through about 58. It says, looking at figure 4, that's that omega-shaped structure. An alternative embodiment of the diffuser 10 is illustrated, which is in all respects the same as the diffuser 10, except for the slot. And then, as I showed you in column 4, he explains about because... And that starts at line 46. Since the diodes are external to the outer diameter of the diffuser 10, refracted light can be emitted from the fixture only after being twice refracted by the diffuser. That's not the case in our structure. Our structure is solid. That's not the case in Fallon. Fallon's structure is solid. I concede it's a U, but it's solid. All the light comes up from the inside. It cannot... You're saying the material it forms, the U, is solid? Is solid. Absolutely, Your Honor. But there's no solid material. I'm confused. Maybe you can explain it to me. There's no solid material between the LED light and the top of the tube, right? I'm looking at the figure on page 20 of the blue brief. Where is the solid material between the LED and the top of the light? This figure. This one here. I'm sorry, which one? Page 20 of the blue brief. This is what I have for page 20? Yes. Correct. The top figure. The LED light is here. Yes. And this is the top of the tube. That's correct. Is there any solid material here? That is not solid. The solid material I'm referring to is the diffuser at the top. The underside to the top, there's no hole. That's a single piece. And in that sense, Your Honor, if you look at that LED, all the light from the LED hits the inside of that solid piece. All the light either goes directly there or bounces. Eventually it's focused on the top of the lens, right? That's correct, and that's a solid piece. How is that different from figure 4 of the Fallon patent? Not the Fallon patent, but the Sladen patent. It's different because even in figure 4, see the big flanges at the bottom, 19 and 15? Right. But the two never meet because the LED would go through that portion, wouldn't it, through that opening? There may be some of that, Your Honor, yes. The testimony from Fallon's own technical expert is that, however, Fallon's device, the infringing device, does not operate like Sladen. In that, as I said, we don't know what that remaining slot is going to be. It's a small portion, if you will. Whether it's a small portion or a large portion, there will be some light emitted from a diode at the bottom through that slot. Your Honor, that is possible as it's depicted here, yes. That's possible. I don't quite understand. I was confused as to whether or not you were saying that this is solid because it's a full circle, so it's a solid circle. No, that's not what I was saying. I was saying hollow in the sense of Sladen, where you take advantage of multiple... Your device provides multiple refractions, as he says, and then multiple internal reflections. Both our witnesses at trial, our witness and Fallon's witness, said, no, that doesn't occur with Fallon's device. It is not hollow in that sense because all the light comes up from the inside and never hits the outside. You don't get multiple refractions, as in Sladen. That occurs also with the slotted tooth. You're going to have multiple refractions when the light hits those flanges, and you're going to have multiple internal reflections, which is exactly how that tube operates. It glows, if you will, Your Honor. Which flanges are you talking about, the 13 and 15 of Figure 4? Yes, those broad pieces at the bottom. But those would be slotted in because those are slots that would be held for that particular tube, right? Yes, but apparently they still expand out. They extend into the slot. They extend into the locating slots, yes, to some extent, yes. Because basically the holding aspects of those slots, they hold the tube in place. Yes, they're there so the tube can be compressed so it can fit in there and be held in place, yes. So I don't see where they would reflect any light except to the outside. Well, we don't know exactly, again, and Sladen doesn't tell us what the real dimension is there on the slot, but we do know that these pieces, 13 and 15, at least the witnesses testified, likely extend out, and you're going to get these multiple refractions of light because that, in essence, becomes part of the outside diameter. And again, Sladen says himself that, looking at Figure 4, this is at Column 3, is an alternative embodiment of the diffuser, which is in all respects the same as the Diffuser 10. That's his teaching. Again, we don't know the extent of that slot, if you will, but in any event, there is, as the witnesses testified, there is going to be light refracted twice with this device, which is key, very key, to what Mr. Sladen says his invention is, in that sense that he utilizes that internal hole, if you will. Again, that's not in our device, and very respectfully, while there's no question that the Fallon diffuser that sits at the top is U-shaped, it doesn't get, there's no light hitting it from the outside. It doesn't utilize these multiple refractions, or the internal reflections, if you will, as discussed in Sladen. And that was the distinction we believe was made where Sladen really keyed on this hollow tube, if you will, which I concede, Your Honor, on the slotted tube. There is a slot there. You can't say it's an entire tube. I concede that. But in all respects, it operates the same, per the teachings of Sladen. All right. Thank you. Thank you, Your Honor. A few quick important points. The first is, I heard the term multiple refractions explained numerous times in a complicated explanation about why they believe maybe Sladen is different than their claims. What you will find, though, in the record, which is controlling here, there was not a single mention of multiple refractions when they tried to distinguish Sladen. There was not a single mention of any of the things that he's talking about or why Sladen may be different. So what's happening here is they're attempting to recast the disclaimer to recapture certain hollow, thin-walled diffusers like Phalanx. And that is simply because these arguments were not made, they should not be considered at this point because they're not in the record. If you look at the rejection itself in the statements, at the pages 44, 69, you will never see the term multiple refractions mentioned at least eight times by Eyelight's counsel. You will also not find anything about distinguishing Sladen based on a tubular structure. That is really a change in the argument. There was never, perhaps when they were prosecuting the case, they could have argued a tubular structure and maybe they could have argued some of these things. They chose not to. What they did do was they disclaimed all hollow, thin-walled diffusers and the prosecution history cannot be clearer on that point. Justice, is it your position that if the court were to agree with you on the disclaimer issue that we've been discussing, that the case should go back for a retrial, for a determination as to whether your client's product, the Phalanx product, infringes after the jury or the fact finder is instructed that hollowness in the tube has been given up? Well, we think at minimum that would have to happen, but I think in this case that's not necessary because of the scope of the disclaimer. At minimum, the jury, Phalanx was entitled to have correct claim constructions for a jury, but fortunately we believe, based on their admission, that we're identical to a hollow embodiment in the provisional that was not carried forward. And the statements about Sladen being so global that all hollow, thin-walled diffusers are disclaimed, we think that's really just a matter for this court to change the claim construction and rule as a matter of law that we're covered by the disclaimer. If we accept the claim construction as it stands, does that force us to affirm the law? If you accept the claim construction as it stands, Your Honor, all of the claim constructions as they stand would put us in a bad position and perhaps the jury result would stand because none of them accounted for the intrinsic record. We have claim constructions that talk about something being the shape of a lawn that doesn't get into hollow or solid. It doesn't exclude thin-walled diffusers. We don't even have a claim construction that requires the quintessential feature of the invention that it be in a long, gated-like pattern. That's nowhere in any of the constructions, even though it was described as being essential and, as I said, the quintessential feature. What you'll see is Eyelight isn't even defending the claim constructions. They admit that they have a disclaimer of hollow. We couldn't even get the district court to put that disclaimer in the jury instructions in the claim construction. So, you know, they actually refused when the judge asked, should we be excluding hollow? They said no, so the judge absolutely went with dictionaries and, unfortunately, they were just out of context and that causes a very strange result. What do you understand Mr. Piseau to be saying today? He says it was a disclaimer of hollowness. What do you understand was the hollowness he was referring to? I mean, I think you're saying it was a disclaimer of nothing in the two. Right. What do you understand him to be saying it was? Well, it's a little strange to me. It really means, if you accept his argument, what you have is that you could never have a material on the outside that forms a lens because, of course, any material on the outside that forms a lens would be a solid material. It's not a liquid and it's not a gas. It seems to me he's arguing that they only disclaim things that somehow are made out of a liquid or a gas because everything, including Slayton, has a hollow outer surface. So that, I believe, is the fallacy with their argument. I thank you very much for my time. Thank you. I'll be just a minute. All rise. Battle report is adjourned until tomorrow afternoon at 2 p.m.